Case 2:21-cr-00246-PA Document 1 Filed 05/18/21 Page 1 of 15 Page ID #:1

FILED
CLERK U.S. DISTRICT COURT
05/18/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: DM DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2020 Grand Jury

| UNITED STATES OF AMERICA, | CR 2:21-cr-00246-PA |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1344(2): Bank Fraud; 18 U.S.C. § 1014: False Statements to a Financial Institution; 18 U.S.C. § 1957: Monetary Transactions in Criminally Derived Property over $10,000; 18 U.S.C. § 982: Criminal Forfeiture] |
| ROBERT BENLEVI, aka "Robert Levi," | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH SIX

[18 U.S.C. § 1344(2)]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. Defendant ROBERT BENLEVI, also known as "Robert Levi," was a resident of Encino, California.

2. Defendant BENLEVI owned and controlled various corporate entities registered in the state of California, including the following: 4Stars Collection LLC ("4Stars

1  Collection"), Joyous-Health4U LLC ("Joyous-Health4U"), Ultra+
2  Health LLC ("Ultra+ Health"), 1Stellar Health LLC ("1Stellar
3  Health"), Bestways2 Health LLC ("Bestways2 Health"), 4Health
4  Wonders LLC ("4Health Wonders"), 2GR8 Health LLC ("2GR8
5  Health"), and Topstars Health LLC ("Topstars") (collectively,
6  the "BENLEVI-controlled entities").  None of the BENLEVI-
7  controlled entities had employees or payroll expenses of its
8  own.
9       Small Business Administration
10      3.   The United States Small Business Administration
11 ("SBA") was an executive-branch agency of the United States
12 government that provided support to entrepreneurs and small
13 businesses.  The mission of the SBA was to maintain and
14 strengthen the nation's economy by enabling the establishment
15 and viability of small business and by assisting in the economic
16 recovery of communities after disasters.
17      4.   As part of this effort, the SBA facilitated loans
18 through banks, credit unions, and other lenders.  The federal
19 government backed these loans.
20      The Paycheck Protection Program
21      5.   The Coronavirus Aid, Relief, and Economic Security
22 ("CARES") Act was a federal law enacted in or around March 2020
23 and designed to provide emergency financial assistance to the
24 millions of Americans who were suffering the economic effects
25 caused by the COVID-19 pandemic.  One source of relief provided
26 by the CARES Act was the authorization of up to $349 billion in
27 forgivable loans to small businesses for job retention and
28 certain other expenses, through a program referred to as the

Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

6.   In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "Borrower was in operation on February 15, 2020 and had employees for whom Borrower paid salaries and payroll taxes or paid independent contractors . . . ."  Another such certification required the applicant to affirm that "[a]ll proceeds of the Loan will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments . . . ."  The applicant (through its authorized representative) was also required to acknowledge that "if the funds are knowingly used for unauthorized purposes, the federal government may hold Borrower and/or Borrower's authorized representative legally liable, such as for charges of fraud." In the PPP loan application, the applicant was required to state, among other things, its average monthly payroll expenses. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, the applicant was required to provide documentation showing its payroll expenses.

7.   A PPP loan application was processed by a participating financial institution ("lender").  If a PPP loan

application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business was eligible for the PPP loan it received, spent the loan proceeds on these permissible expense items within a designated period of time, and used a certain portion of the loan proceeds for payroll expenses.

Relevant Tax Forms

9. Internal Revenue Service ("IRS") Forms 940 were forms that employers filed with the IRS to report and ultimately to pay an employer's annual Federal Unemployment Tax Act tax. All employers that paid payroll were required to file these forms on an annual basis.

10. IRS Forms 941 were forms that employers filed with the IRS to report wages paid, number of employees, and quarterly income tax, social security tax, and Medicare tax withheld from employees' paychecks. All employers that paid payroll were generally required to file these forms on a quarterly basis.

///

SBA-Approved Lenders

11. "Bank A" was a financial institution based in California, whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank A was an approved SBA lender of PPP loans.

12. "Bank B" was a financial institution based in Minnesota, whose deposits were insured by the FDIC. Bank B was an approved SBA lender of PPP loans.

13. "Bank C" was a financial institution based in Utah, whose deposits were insured by the FDIC. Bank C was an approved SBA lender of PPP loans.

14. "Company C" was a financial technology company based in California. Company C participated in SBA's PPP program by, among other things, acting as a service provider between small businesses and certain lenders, including Bank C. Small businesses seeking PPP loans could apply through Company C for PPP loans. Company C would review the loan applications. If a loan application received by Company C was approved for funding, a partner lender, such as Bank C, disbursed the loan funds to the applicant.

15. "Bank D" was a financial institution based in North Carolina, whose deposits were insured by the FDIC. Bank D was an approved SBA lender of PPP loans.

16. Banks A, B, C, and D were financial institutions as defined in Title 18, United States Code, Section 20.

B.   THE SCHEME TO DEFRAUD

17.  Beginning in or around April 2020, and continuing until in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant BENLEVI, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to obtain monies, funds, credits, assets, and other property owned by and in the custody and control of Bank A, Bank B, Bank C, and Bank D by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

18.  The fraudulent scheme operated and was carried out, in substance, as follows:

   a.   Defendant BENLEVI submitted, and caused to be submitted, approximately twenty-seven PPP loan applications to Bank A, Bank B, Bank C (through Company C), and Bank D, for loans of $1,000,000 each, on behalf of the BENLEVI-controlled entities.  These loan applications were false and fraudulent in that they contained materially false statements and were accompanied by fraudulent documents purporting to demonstrate the BENLEVI-controlled entities' eligibility for the PPP loans.

   b.   In particular, defendant BENLEVI made, and caused to be made, materially false statements in these PPP loan applications, which statements defendant BENLEVI knew were false when he made them and caused them to be made, including:

      i.   Defendant BENLEVI falsely represented that the each of the entities seeking PPP loans had 100 employees and average monthly payroll expenses of $400,000, when, in fact,

defendant BENLEVI knew that the entities did not have any employees or payroll expenses; and

   ii. Defendant BENLEVI falsely represented that the funds sought through the PPP loan applications would be used to pay payroll, health care benefits, utilities, and other business expenses of the BENLEVI-controlled entities, when, in fact, defendant BENLEVI knew that the entities did not have any of these business expenses.

  c. Defendant BENLEVI also submitted, and caused to be submitted, false documents in support of the PPP loan applications, which documents defendant BENLEVI knew were false, including:

   i. Fabricated IRS Forms 940 for year 2019 purporting to be Employer's Annual Federal Unemployment Tax Return forms filed with the IRS for the BENLEVI-controlled entities, which falsely stated that the companies each had an annual payroll of $4,800,000; and

   ii. Fabricated IRS Forms 941 for year 2019 purporting to be Employer's Quarterly Federal Tax Return forms filed with the IRS for the BENLEVI-controlled entities, which falsely stated that the companies each had 100 employees and a quarterly payroll of $1,200,000.

  d. In reliance on defendant BENLEVI's materially false statements and documents, his concealment of material facts, and his certifications in the PPP loan applications, Bank D approved and funded the PPP loans sought by defendant BENLEVI in the names of 1Stellar Health, Joyous-Health4U, and Ultra+ Health, by wiring approximately $1,000,000 into Bank D bank

accounts in the names of each of those three entities. Defendant BENLEVI was the sole signatory on all three of the accounts that received loan proceeds.

   e. Defendant BENLEVI did not use these proceeds for business expenses at any of the BENLEVI-controlled entities, but instead used them for personal expenses, including cash withdrawals, payments on his personal credit cards, and transfers to other personal and business accounts he controlled.

## C. EXECUTIONS OF THE SCHEME

19. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant BENLEVI committed the following acts, each of which constituted an execution of the above-described fraudulent scheme:

| COUNT | DATE | ACT |
|---|---|---|
| ONE | 4/28/20 | Submission of application to Bank D for PPP loan in the name of Ultra+ Health. |
| TWO | 5/24/20 | Submission of application to Bank D for PPP loan in the name of 1Stellar Health. |
| THREE | 5/29/20 | Submission of application to Bank D for PPP loan in the name of Joyous-Health4U. |
| FOUR | 6/4/20 | Submission of application to Bank D for PPP loan in the name of 4Stars Collection. |
| FIVE | 6/9/20 | Submission of application to Bank D for PPP loan in the name of 4Health Wonders. |
| SIX | 6/12/20 | Submission of application to Bank D for PPP loan in the name of Bestways2 Health. |

## COUNTS SEVEN THROUGH TWELVE

[18 U.S.C. § 1014]

20. The Grand Jury realleges paragraphs 1 through 16, 18, and 19 of this Indictment here.

21. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant BENLEVI knowingly made the following false statements to Bank D, an institution the accounts of which were then insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the actions of Bank D in connection with PPP loan applications:

| COUNT | DATE | FALSE STATEMENT |
|---|---|---|
| SEVEN | 4/28/20 | Promissory note submitted to Bank D in the name of Ultra+ Health falsely stating Ultra+ Health was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors. |
| EIGHT | 5/24/20 | Promissory note submitted to Bank D in the name of 1Stellar Health falsely stating 1Stellar Health was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors. |
| NINE | 5/29/20 | Promissory note submitted to Bank D in the name of Joyous-Health4U falsely stating Joyous-Health4U was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors. |
| TEN | 6/4/20 | Promissory note submitted to Bank D in the name of 4Stars Collection falsely stating 4Stars Collection was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors. |

| COUNT | DATE | FALSE STATEMENT |
|---|---|---|
| ELEVEN | 6/9/20 | Promissory note submitted to Bank D in the name of 4Health Wonders falsely stating 4Health Wonders was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors. |
| TWELVE | 6/12/20 | Promissory note submitted to Bank D in the name of Bestways2 Health falsely stating Bestways2 Health was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors. |

COUNTS THIRTEEN THROUGH SIXTEEN

[18 U.S.C. § 1957]

22. The Grand Jury realleges paragraphs 1 through 16, 18, and 19 of this Indictment here.

23. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant BENLEVI, , knowingly engaged in the following monetary transactions of a value greater than $10,000, involving funds he knew to be criminally derived property, which property, in fact, was derived from specified unlawful activity, namely, bank fraud, in violation of Title 18, United States Code, Section 1344(2), as charged in Count Six of this Indictment, and false statements to a financial institution, in violation of Title 18, United States Code, Section 1014, as charged in Count Twelve of this Indictment:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| THIRTEEN | 7/9/20 | Purchase of cashier's check from Bank D in the amount of approximately $54,000 payable to "4Health Wonders" |
| FOURTEEN | 7/9/20 | Purchase of cashier's check from Bank D in the amount of approximately $52,000 payable to "Ultraplus Health" |
| FIFTEEN | 7/9/20 | Purchase of cashier's check from Bank D in the amount of approximately $94,000 payable to "Robert Benlevi" |
| SIXTEEN | 7/9/20 | Purchase of cashier's check from Bank D in the amount of approximately $48,000 payable to "Robert Benlevi" |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(2)]

24. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Twelve of this Indictment.

25. The defendant, if so convicted, shall forfeit to the United States of America the following:

   a. All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

   b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

26. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished

1  in value; or (e) has been commingled with other property that
2  cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982(a)(1)]

27. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offenses set forth in any of Counts Thirteen through Sixteen of this Indictment.

28. The defendant, if so convicted, shall forfeit to the United States of America the following:

    a. Any property, real or personal, involved in such offense, and any property traceable to such property; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

29. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as

an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

                                                A TRUE BILL

                                                /S/

                                                Foreperson

TRACY L. WILKISON
Acting United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DANIEL KAHN
Acting Chief, Fraud Section
United States Department of Justice

NIALL M. O'DONNELL
Assistant Chief, Fraud Section
United States Department of Justice

EMILY Z. CULBERTSON
HELEN LEE
Trial Attorneys, Fraud Section
United States Department of Justice